McKinney, J.
delivered the opinion of the court.
The defendant, Mary F. Baldwin, is a married woman, wife of the defendant, Henry Baldwin. The bill seeks to subject her separate property to the payment of a promissory note for 1337 50, made by her and another, as her surety, to complainant, on the 15th of January, 1842. The consideration of said note, was the purchase by said Mary of certain articles of household and kitchen furniture, sold as the property- of her husband, under the decree of a court of chancery. The bill alledges, that the husband, Henry Baldwin, was utterly insolvent ; that said furniture was absolutely necessary for the comfort and support of said Mary and her children; that at the time said note was made, it was understood and agreed, that the separate property of said Mary was to be liable for the payment thereof, »and that credit was given alone on the faith of such separate estate; that her husband had no credit; was not looked to for payment, and was not considered in any way as a party to the transaction.
It appears, that on the 24th day of October, 1830, certain property, consisting in part of a number of slaves, was con veycd to the defendant, Hoggalt, by deed of marriage settle • *213 ment in trust, for the sole and separate use of the defendant, Mary, then a feme sole. A copy of said deed is exhibited in the record. After vesting the legal title to said property in the trustee, it contains, among others, the following stipulations, viz, that the said Mary “shall have full power and authority, by her directions in writing under her hand, in the presence of one or more witnesses, to alienate, sell, dispose of, or invest the said negro slaves, debts, money and other property, in any way or manner she may think proper: and also to bequeath, or devise by her last will and testament; with the power, from time to time, to appoint any other trustee, or agent, for the management of said negroes, debts, money and other property. It is further agreed by the-parties. to these presents, that the said negroes and their increase shall remain in the possession of the said Mary, or the possession^ any person the said Mary may choose; and that she may, by her directions in writing as aforesaid or otherwise, appropriate as she may think proper, the hire or labor of said '.negroes and their increase, and also the interest and profits arising from the monies due her, from time to time, and at all times hereafter.”
The bill alledges, that some of the slaves mentioned in said deed of settlement have died, some have been sold, and others mortgaged; but that a number still remain undisposed of, and prays that by a sale, or from the profits of the hire of said slaves, the complainant may have satisfaction'of "said debt. The defendant, Mary, in her answer to the bill, denies that there was any understanding or agreement on her part, that her separate property was to be made liable to the payment of said note, and there is no proof in the record upon this point. The chancellor dismissed the bill, and the complainant brings the cause to this court by appeal. It is insisted, on the part of the complainant, that the decree is erroneous, and ought to be reversed. We do not think so. In the case of *214 Morgan vs. Elam, A Yerg. 375, it is laid down as the settled doctrine upon this subject, that the extent of the power of a married woman, over her separate estate, depends upon the terms of the deed or settlement; that she is to be regarded as a 'feme sole only so far as the deed has expressly conferred upon her the power of acting as such; that she can exercise no authority or control over her separate property, except such as is specially given in the deed, and only in the mode therein prescribed. This, we think, is the correct principle, and it is decisive of this case, [it is obvious that the making of a promissory note, which contains no reference either to the power or to the subject matter thereof, and indicates no agreement, or intention, on the part of the maker, to create a charge on her separate estate, cannot be regarded as an execution of the power conferred upon the defendant in the foregoing deed of settlement, or as an appointment under it ; it is merely evidence of a personal contract, or promise on the part of the defendant, Mary, to pay the amount of money therein specified, and only constitutes the complainant her .general creditor. Courts of equity, in analogy to the rule of law, hold that a married woman cannot, by her general personal contracts - or agreements, bind her separate estate. But, as a consequence of the doctrine in equity, that she may take and enjoy property to her separate use, she is permitted," to the extent and in the mode prescribed in the deed of settlement, to deal with it as a feme sole, when the intention 'clearly appeared so to dispose of it, but the intention is necessary to be manifested. 2 Roper on Husband and Wife, 239-40, and cases therein cited.
But if is argued, that the intention to charge her separate estate may be implied, and that the execution of a promissory note or bond as principal or surety, for herself or her husband, or jointly with him, is prima facie evidence of such intention. It is true some of the cases have gone this length. In 2 Roper *215 on Husband and Wife, 253-4, note, it is said, that this is a strong case, of constructive implication by courts of equity, founded more upon a desire to do justice, than upon any satisfactory reasoning. The argument in favor of it is, that the security must be suppqsed to have been executed with the intention that it shall operate in some way, and that it can have no operation, except as against her separate estate. But judge Story, who cites the above passage, adds, “to this extent the doctrine has not, as yet, been established, although the tendency of the more recent decisions is certainly in that direction.)” 2 Story’s Eq. sec. 1400. We cannot concur in this reasoning. If correct, as has been justly remarked, it would apply to all the general pecuniary engagements of a married woman, and, we may add, would confer upon her the power of making personal contracts generally, in opposition to the uniform principle, now as clearly established in equity as at law, that a feme covert cannot, by contract, bind either her person or her property generally.- Such a doctrine would defeat the object of conveyances for the separate use of married women. A different rule has governed the course of decision in this state, at least since the determination of the case of Morgan vs. Elam ; a rule, we think, more consis£ent with sound principle, and the weight of authority, which is, that to charge the separate estate of a married woman with her contracts, or engagements, there must be proof of’an express agreement and intention to create such charge: it cannot be made liable by implication.
The decree of the chancellor will be affirmed.